### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY A. ANDERSON, | : | |
|        Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-2918 |
| | : | |
| KILOLO KIJAKAZI, COMMISSIONER | : | |
| OF SOCIAL SECURITY,[1] | : | |
|        Defendant. | : | |

Henry S. Perkin, M.J.                                                                      September 30, 2021

### MEMORANDUM OPINION

Plaintiff, Tammy Anderson ("Plaintiff"), brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Defendant"), denying her claim for disability insurance benefits ("DIB") provided under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-434. Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. § 405(g). Presently before this Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review (ECF No. 19) and Defendant's Response to Request for Review of Plaintiff (ECF No. 20). For the reasons that follow, Plaintiff's Request for Review will be DENIED and the decision of the Commissioner of Social Security be AFFIRMED.[2]

### I.  PROCEDURAL HISTORY

Plaintiff filed her application for SSI on October 25, 2016, alleging disability since August 28, 2015. (Tr. 51, 297-303.) Plaintiff claims disability as a result of sleep apnea, asthma, type 2 diabetes, obesity, carpal tunnel syndrome, pinched nerve in her neck and pinched nerve in her back. The state agency initially denied Plaintiff's claims on March 22, 2017, and she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 51, 229-38.)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. 636(c). *See* Standing Order, In RE: Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); ECF No. 3 ¶ 2; No. 6.

On February 20, 2019, two days prior to the scheduled ALJ hearing, Plaintiff's counsel submitted 110 pages of medical records for Plaintiff.  A hearing was held on February 22, 2019 at which Plaintiff, who was represented by counsel, appeared and testified.  (*Id.* at 51, 65-102.)  During the ALJ hearing, Plaintiff amended her onset date of disability to January 1, 2017. (Tr. 51, 71.) Daniel Rappucci, a vocational expert ("VE"), also appeared and testified at the February 22, 2019 hearing.  (Tr. at 51.)

On March 18, 2019, after considering evidence of Plaintiff's impairments, the ALJ issued an unfavorable decision in which she found that the Plaintiff, given her age, education, work experience, and residual functional capacity ("RFC"), was capable of performing her past relevant work. (Tr. at 51-59.)  Thus, the ALJ concluded that Plaintiff was not disabled.  (*Id.*)  Plaintiff submitted additional evidence and timely requested review of the ALJ's decision on March 9, 2019.  (Tr. at 1-6, 8-36, 29-38, 42-47, 145-46.)  The Appeals Council denied Plaintiff's Request for Review on April 20, 2020.  (*Id.* at 1-6.)  Thus, the ALJ's dated March 14, 2019 decision became the final decision of the agency.

Plaintiff initiated a civil action on June 12, 2020, seeking judicial review of the Commissioner's decision that she was not disabled. (ECF No. 2.)  She subsequently filed her Brief and Statement of Issues in Support of Request for Review on January 18, 2021. (ECF No. 19.)  The Commissioner filed her Response on February 17, 2021.  (ECF No. 20.)

## II.    **LEGAL STANDARD**

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision.  Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision.  *Richardson v. Perales*, 402 U.S. 389, 407 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993).  Substantial evidence is "more than a mere scintilla of evidence," but may be less than a preponderance of the evidence. *Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv.*, 48 F.3d 114, 117 (3d Cir. 1995).  Therefore, the issue before this Court is whether there is substantial evidence to support the Commissioner's final decision that

Plaintiff is "not disabled" and is capable of performing jobs that exist in significant numbers in the national economy.

Though the Court's duty is "to scrutinize the record as a whole to determine whether the conclusions reached [by the ALJ] are rational," *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979), the Court may not undertake *de novo* review of an ALJ's decision, nor may it re-weigh the evidence of record. *Williams*, 970 F.2d at 1182 (A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder."); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). However, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). This Court's review of legal questions presented by the Commissioner's decisions is plenary. *Schaudeck v. Comm'r of Social Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [him] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, he will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," he will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether he can perform work he has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform his past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work which exists in the national economy. *See id.* § 404.1520(b)-(f).

*Schaudeck,* 181 F.3d at 431-32. The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience and residual functional capacity. *Poulos v. Comm'r of Social Sec.*,

474 F.3d 88, 92 (3d Cir. 2007).  RFC is defined as the most an individual can still do despite her limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### III.   BACKGROUND

Plaintiff was born in 1961 and was fifty-five years old at the time of her amended alleged disability onset date, January 1, 2017.  She graduated from a vocational technical high school program and had a cosmetologist license. (Tr. at 74.)  With respect to work history, Plaintiff testified that she owned her own cosmetology shop for two years right out of high school, she worked as a cashier and stocked store shelves at a gas station in 2004-2005, worked at a Dollar Store from 2004 to 2006 as an assistant manager, working the cash register, unloading trucks, stocking shelves, open or close the store, supervise other employees on shifts, and make bank deposits.  (*Id.* at 75-76.)  She worked at an assisted living facility from 2006-2009 as a med tech checking residents vital signs and blood sugar levels, distributing medications, overseeing nurses' aides on shifts, and also as a dietary aide, washing dishes, unloading trucks, setting and clearing tables and serving lunch.  (*Id.* at 76-78.)  Plaintiff also worked as a care giver from 2010 to 2014 at a residential facility for disabled clients where she ensured residents were out of bed, dressed, taken to the store and doctor's appointments and for outings.  (*Id.* at 78-79.)  She became an assistant manager there and in addition to her former caregiving duties, Plaintiff also grocery shopped, managed employees, completed plan of care paperwork and reported on employee performance to the manager.  (*Id.* at 79-81.)  Plaintiff then was employed at another residential facility for disabled people where she was responsible for the entire house, getting residents dressed in the morning, driving them to their jobs, administering medication, completing paperwork, taking them to doctor appointments and running errands. (Id. at 81-83.)  Plaintiff also worked part-time as a caretaker for a handicapped person for 18 years concurrently with the above jobs.  (*Id.* at 83-84.)

During the ALJ hearing, Plaintiff testified that her doctor told her that she cannot lift 10 pounds and to perform caretaking, you must be able to lift 15 pounds and be certified in CPR, something she cannot do. (*Id.* at 86.)  She started having migraines in July of 2016 and could not concentrate on work.  (*Id.*)  Her memory is getting worse and she thinks it is due to her migraines.  (*Id.* at 87.)  She has limited mobility in her neck following her neck surgery in August of 2017.  (*Id.*)  She has a hard time swallowing and chokes sometimes and moving her neck up and down and turning it hurts.  (*Id.* at 88.)  She has worsening pain in her back and her

doctor will not perform surgery because she is overweight. (*Id.*) She was scheduled to begin physical therapy the week after the ALJ hearing before her insurance approves injections to help with her back pain. (*Id.* at 88.)

Plaintiff explained that she is up and down, alternating between sitting and standing all day, doing dishes and cooking intermittently. She used to love to cook but her sister usually cooks. (*Id.* at 88-89.) If Plaintiff cooks dinner, she has to start preparations hours ahead of time due to the need to alternate sitting and standing. (*Id.* at 89.) She sometimes falls asleep during the day and she doesn't go out much because she is in pain. (*Id.* at 90.)

Plaintiff further testified that her pain is in the middle of her lower back to her tailbone, her neck and her left side is numb. (*Id.* at 90.) Her feet are always cold, her right leg goes "tingly sometimes" and she has muscle spasms. (*Id.*) She used to paint as a hobby and has not painted for over a year. (*Id.* at 90-91.) She used to go out and play pool or go dancing with her friends and just stays home now. (*Id.* at 90.) Plaintiff further testified that she falls asleep all the time, even while watching tv because she cannot concentrate. (*Id.* at 91.) Plaintiff testified that she wears a splint on her hands to prevent her fingers from "locking down." (*Id.* at 92.)

Plaintiff resides with her sister, brother-in-law and adult niece with Downs Syndrome. (Tr. at 72.) With respect to household activities, Plaintiff testified that she is unable to do much around the house, but helps with some light meal preparation and dishes. (Tr. at 88-89.) Plaintiff is able to drive a car but her license was suspended in March of 2017 for a DUI and her sister now drives her anywhere she needs to go. (*Id.* at 73-74.)

The VE then classified Plaintiff's past work as a convenience store clerk as performed as medium, unskilled work with an SVP level of 2. (*Id.* at 93-94.) At the Dollar Store, management trainee or assistant manager, generally performed at light but as performed at medium, skilled work with an SVP of 6. (*Id.* at 94.) Dietary aide, actually performed at medium level, unskilled work with an SVP of 2. (*Id.*) The VE classified Plaintiff's med tech position as a nurse assistant, performed at medium, semi-skilled work with an SVP of 4. (*Id.*) Plaintiff's caretaker position was classified as a resident care aide, performed at medium, skilled work with an SVP of 6. (*Id.* at 94.) Assistant manager would be titled management trainee. (*Id.* at 95.) When Plaintiff was in charge of the group home, the VE classified that job as a residence supervisor, actually performed at medium, skilled work with an SVP of 6. (*Id.*) Plaintiff's 18 year

caregiving role was classified as a home attendant, actually performed at light, semi-skilled work with an SVP of 3.  (*Id.*)

The ALJ then described to the VE a hypothetical individual of Plaintiff's age and education, with the past work he described is limited to: light work, no overhead reaching bilaterally, can otherwise frequently reach, handle and finger in other planes, cannot climb ladders, ropes, or scaffolds, cannot crawl or kneel, can occasionally engage in all other postural maneuvers, and can tolerate no more than occasional exposure to extreme cold temperatures or vibration. (Tr. 95-96.)  The VE testified that such an individual could perform the jobs of management trainee and residence supervisor, not as Plaintiff performed them in the past but as those jobs are generally performed.  (Tr. 95-100.)

In addition to reviewing the transcript of the administrative hearing, this Court has independently and thoroughly reviewed the administrative record.  We will not further burden the record with a detailed recitation of the facts.  Rather, we incorporate relevant facts in our discussion below.

## IV.    ALJ DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

Plaintiff's alleged disability involves an inability to work because of sleep apnea, asthma, type 2 diabetes, obesity, carpal tunnel syndrome, pinched nerve in her neck and pinched nerve in her back.  The ALJ proceeded through the sequential evaluation process and determined that Plaintiff was not disabled as a result of her impairments. (*Id.* at 51-59.)

At step one, the ALJ initially noted that Plaintiff had not engaged in any substantial gainful activity since January 1, 2017, the amended alleged onset date. The ALJ noted that Plaintiff worked after her amended alleged onset date but not all this work activity rose to the level of substantial gainful activity.  (Tr. at 54.)

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease ("DDD") of the cervical spine, cubital tunnel syndrome, and obesity. (Tr. 54.)  The ALJ found Plaintiff's physical impairments of hyperlipidemia, asthma, diabetes mellitus, obstructive sleep apnea, dysphagia, and a lung nodule, singly and in combination, to be non-severe because they do not cause more than minimal limitation in the Plaintiff's ability to perform basic physical work.  (*Id.*)  The ALJ found Plaintiff's alleged migraine headaches not a medically-determinable impairment because "[t]his appears on lists of diagnoses, including in

Exhibit 8F, an after-visit summary for a visit with St. Luke's Neurology, but the record contains no findings, examinations, or even descriptions of symptoms to support the diagnosis." (*Id.*)

At step three, the ALJ determined the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and therefore, could not establish her entitlement to benefits on that basis. (Tr. 54-55.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR 404.1567(b) with the following limitations: no overhead reaching bilaterally, no more than frequent reaching in other directions, handling, or feeling/fingering, no climbing ladders, ropes, or scaffolds, crawling or kneeling, no more than occasional all other postural maneuvers, and no more than occasional exposure to extreme cold temperatures or vibration. (Tr. 55-58.)  At Step 4, based on the testimony of the VE, the ALJ found that Plaintiff was capable of performing past relevant work as a management trainee and residence supervisor, as those jobs are generally performed, because this work does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity.  (Tr. 58.)

At Step Five, the ALJ concluded that Plaintiff had not been disabled from January 1, 2017 through March 18, 2019, the date of her decision.  (Tr. 59.)  In her Request for Review, Plaintiff asserts the following issues:

(1) whether Plaintiff timely informed the ALJ about all the evidence in accordance with the governing regulations;

(2) whether the ALJ's decision is supported by substantial evidence;

(3) whether the ALJ followed the regulations in reaching his conclusion that Plaintiff is not disabled; and

(4) whether the ALJ explained why she found Plaintiff's testimony inconsistent.

ECF No. 20, p. 6.  The issues before this Court, however, are limited to whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence and whether the ALJ applied the proper legal standards in evaluating a claim of disability.

This Court has reviewed the various sources of medical evidence, the submissions of counsel, and the testimony at the ALJ hearing.  Based on this Court's independent and thorough

7

review of the record and for the reasons that follow, we find that the ALJ has provided appropriate and adequate support for his decision. Accordingly, we conclude that the ALJ's decision is supported by substantial evidence of record and Plaintiff's Request for Review is denied.

V.   **DISCUSSION**

    **A. Whether the ALJ's Refusal to Consider Evidence She Was Not Informed About in Accordance With the Governing Regulations Was Erroneous.**

In her brief, Plaintiff refers to evidence that the ALJ declined to consider because she was not informed about it within five days before the hearing. Pl.'s Br. at 3, 11. Because Plaintiff did not satisfy the requirements of 20 C.F.R. §404.935(a) and (b), the ALJ excluded this evidence. According to Plaintiff, this was erroneous and remand for consideration of this evidence is warranted.

Effective January 17, 2017, the agency amended governing regulations related to evidence submissions. 20 C.F.R. § 404.935 (Submitting Written Evidence to an Administrative Law Judge) provides:

> (a) When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. **Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence,** unless the circumstances described in paragraph (b) of this section apply.

20 C.F.R. § 404.935(a) (emphasis added). If a claimant misses the deadline described in 20 C.F.R. § 404.935(a), the ALJ will accept the evidence under the following limited circumstances:

> (1) Our action misled you;
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.

20 C.F.R. § 404.935(b) (Tr. 51.) The ALJ opined:

> The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled

> hearing date. I decline to admit this evidence because the requirements of 20 CFR 404.935(b) are not met. On February 20, 2019, two business days before the scheduled hearing date, the claimant submitted 93 pages of records from St. Luke's Health Network physicians, 15 additional pages from St. Luke's Health Network physicians, and two one-page letters from Gateway Health, each accompanied by a cover letter from claimant's representative which did not indicate any explanation for the tardy submission.
>
> At [the] hearing, claimant's representative explained only "Tammy [the claimant] just gave those to me recently." I provided additional time post-hearing for a more fulsome explanation, but none was received. The explanation at hearing certainly does not constitute an unusual, unexpected, or unavoidable circumstance within the meaning of the regulation, and accordingly, I decline to admit the materials in question.

(Tr. 51-52.) At the ALJ hearing, the following exchange took place between Plaintiff's counsel and the ALJ:

> ALJ: Okay. Let's see. It looks like we have some material submitted to the file two days ago. As I'm sure you know, you're required to either submit material at least five business days prior to hearing or –
>
> ATTY: Yeah.
>
> ALJ: -- notify us of what's outstanding at least five business days prior to hearing. **Is there good cause to admit those late-submitted materials?**
>
> **ATTY: Yes, there is. We just received those, and -- you know, Tammy -- Tammy just gave those to me just, you know, recently.**
>
> **ALJ: Okay. Well, were these materials that you requested earlier or --**
>
> **ATTY: She brought those in, you know, just, you know, information that she had**.
>
> ALJ: Okay. Well, I don't know that that's the sort of unexpected occurrence that would be good cause under the rules. If you'd like to submit a more wholesome explanation sometime in the next three business days --
>
> ATTY: Okay.
>
> ALJ: -- feel free to do that, and I'll certainly --
>
> ATTY: Thank you.

>ALJ:  -- consider it. Other than that, is the record complete at this time?
>
>ATTY:  Yes.

(Tr. 68-69.) (emphasis added). Evidence not presented to the [ALJ] should not be reviewed by the district court nor be the basis of remand to the Commissioner, unless the evidence is 'new' and 'material,' and there is 'good cause' [for the claimant] not having produced the evidence earlier." *Matthews v. Apfel*, 239 F.3d 589, 590 (3d Cir. 2001). Plaintiff offers no explanation or good cause reason why these records were not submitted until two days prior to the ALJ hearing. The ALJ provided time for counsel to offer such reason and counsel declined to do so.  The ALJ determined that Plaintiff did not timely inform her of outstanding evidence in accordance with 20 C.F.R. § 404.935(a) and concluded that Plaintiff failed to establish good cause for the late submission as defined in 20 C.F.R. § 404.935(b). (Tr. 51-52.) This claim will be denied.

**B.  Whether the ALJ's Decision Is Supported by Substantial Evidence**

Plaintiff contends, without citation to the record, that the ALJ's decision is not substantially supported. Pl.'s Br. at 5-8. She argues that the ALJ rejected her "continuous hospitalizations" and "continuous appointments with the health profession," and did not consider numerous impairments that allegedly prevent her from working or the "change of lifestyle" she endured as a result of her impairments. *Id.* at 6-8.  When considering the record, the ALJ found Plaintiff's degenerative disc disease, cubital tunnel syndrome, and obesity were severe impairments that significantly limited her ability to perform basic work activities (Tr. 54, citing 20 CFR 404.1520(c) and Social Security Ruling (SSR) 85-28). The ALJ mentioned that Plaintiff's BMI of 38-40 is considered obese but no medical source attributed any work-related limitations to Plaintiff's obesity (Tr. 54-57.) Thus, the ALJ found Plaintiff's obesity was a severe impairment and fully considered any resulting worsening of her symptoms in combination with her orthopedic impairments, diabetes, sleep apnea, high cholesterol, and respiratory conditions when assessing her RFC. (Tr. 55.)

Regarding Plaintiff's degenerative disc disease, the ALJ noted that a pre-onset date MRI of Plaintiff's cervical spine from October 2016 showed disc degeneration and a herniation at C6-7 with mild canal stenosis and foraminal narrowing at C5-6 and C6-7. (Tr. 56, 430-31.) The ALJ noted that during a neurological examination in January 2017, Plaintiff exhibited moderate limitations in cervical and lumbar range of motion; a strongly positive left-sided Spurling's sign;

4+/5 left grip strength; reduced sensation in the C6-7 distribution; full strength in the bilateral lower extremities; normal sensation, normal gait, normal tandem, and paravertebral spasm; strength was 5/5 in the bilateral lower and upper extremities; and her reflexes were normal. (Tr. 56, 469.) The ALJ noted how the neurologist assessed cervical and lumbar DDD, cervical spinal stenosis with radiculopathy, and lumbar spinal stenosis. (Tr. 56, 466.) Along with the clinical details, Plaintiff received a referral for physical therapy and was advised to avoid axial loading, vigorous head and neck movements, and chiropractic manipulation (Tr. 466-71, 474-76).

Orthopedic records from 2017 indicated a diagnosis of osteoarthritis of the cervical spine with radiculopathy but Plaintiff worked part-time as a home care attendant (at the medium exertional level) until she had neck surgery on August 24, 2017. (Tr. 492, 526-33, 546-50.) Plaintiff improved after her surgery; she no longer needed to use a cervical collar daily, but had certain activity restrictions and required physical therapy and range of motion exercises. (Tr. 494-98, 537.) By November 2017, three months after surgery, Plaintiff had no current barriers and was capable of self-care. (Tr. 499-501.) Based on these limited records, the ALJ concluded that Plaintiff's surgery was successful because there is no indication from any medical provider about ongoing functional limitations. (Tr. 58.)

In July 2018, Plaintiff had carpal tunnel and cubital tunnel release surgery and was advised not to lift, push, or pull until her follow-up appointment. (Tr. 595-60.) In August 2018, Plaintiff was referred for occupational therapy due to ulnar drift of the fingers. (*Id.* at 586.)

The ALJ also considered, but found not severe, Plaintiff's hyperlipidemia, asthma, diabetes mellitus, obstructive sleep apnea (OSA), dysphagia, and a lung nodule, because when considered singly and in combination, those impairments did not cause more than minimal limitation in the claimant's ability to perform basic physical work activities. (Tr. 54.) Plaintiff's diabetes, first diagnosed in September 2016, is controlled with medication and diet. (*Id.* at 56-57.) Plaintiff's asthma is also controlled with medication, although she continues to smoke. (Tr. 56-57, 551-57.) Plaintiff briefly experienced dysphagia (Tr. 57, 563-68), uses a C-PAP for sleep apnea (Tr. 613, 624-26), and treatment notes mention a lung nodule. (Tr. 579.).

Finally, the ALJ found Plaintiff's migraine headaches were not a medically determinable impairment because the record contains no findings, examinations, or even descriptions of symptoms to support her diagnosis. The record contains a reference to migraine headaches on a

11

list of diagnoses, including in an after-visit summary for a visit with St. Luke's Neurology. (Tr. 579, 609.)

The ALJ considered the opinion offered by state agency medical consultant Jay Shaw, M.D., who reviewed the record on March 22, 2017. (Tr. 57.) Dr. Shaw opined that Plaintiff's severe impairments of degenerative disc disease and obesity, and non-severe impairments of asthma and sleep apnea, limited her to light exertional work that never requires climbing ladders, ropes, or scaffolds; frequently requires balancing and crouching; and occasionally requires climbing ramps and stairs, kneeling, and crawling. (Tr. 233-35.) Libbie Russo, MD, a second state agency medical consultant, also reviewed the record and agreed with the limitations assessed by Dr. Shaw. (Tr. 477-78.) The ALJ gave partial weight to the opinions of Drs. Russo and Shaw, accepting their opinions that Plaintiff could perform light work, but finding her more limited in manipulative and postural activities, and to have certain environmental restrictions, based upon the evidence related to her cubital and carpal tunnel syndromes, and giving her the full benefit of the doubt as to the exacerbating effects of her obesity and chronic pain.

The record supports the ALJ's RFC assessment which accommodates limitations related to Plaintiff's orthopedic problems. Plaintiff would remain capable of light exertional level work with the above-added postural, manipulative, and environmental restrictions.

### C. Whether the ALJ's Decision Complies With the Regulations.

Plaintiff criticizes the ALJ's decision for failing to consider evidence that supports her claim, but Plaintiff does not specify what evidence was excluded by the ALJ. (Pl.'s Br. at 9-10.) She argues that she is unable to handle workplace stress and lacks stability necessary to perform in a work environment but no such credible evidence appears in the record before the ALJ.

### D. Whether Plaintiff Testified Consistently.

The ALJ found Plaintiff's testimony was not consistent with the evidence of record. Pl.'s Br. at 11. The ALJ reviewed Plaintiff's testimony and the evidence properly submitted in accordance with the regulations, noting Plaintiff's testimony that she cannot lift more than 10 pounds, turn her head, look up and down, swallow, is in constant pain, has left side numbness, and has difficulty with her memory and concentration. (Tr. 56.) However, the ALJ noted that in contrast to her testimony, the evidence demonstrates that Plaintiff's surgeries were successful and she did well post-operatively through November 2017. (Tr. 57-58.) Likewise, following

carpal and cubital tunnel syndrome surgery, Plaintiff was referred for occupational therapy, but there is no medical opinion regarding any ongoing functional limitations from her medical providers for either impairment. (Tr. 58.) The ALJ concluded that Plaintiff's impairments were adequately accommodated by limiting her to light exertional work with added postural, manipulative, and environmental restrictions provided in the RFC. (Tr. 58.) Thus, the ALJ's assessment of Plaintiff's testimony is supported by substantial evidence.

## VI.     CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's Request for Review is DENIED. An appropriate Order follows.

BY THE COURT:

_____
HENRY S. PERKIN
United States Magistrate Judge